# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JAHBREE ROBERSON,<br><br>    Plaintiff,<br><br>v.<br><br>ALAMEDA COUNTY,<br><br>    Defendant. | Case No. 24-cv-02106-PHK<br><br>**ORDER DENYING-IN-PART AND GRANTING-IN-PART DEFENDANT COUNTY OF ALAMEDA'S MOTION TO DISMISS AND GRANTING COUNTY OF ALAMEDA'S REQUEST FOR JUDICIAL NOTICE**<br><br>Re: Dkt. 11 |

Now before the Court is Defendant County of Alameda's ("Defendant Alameda") Motion to Dismiss seeking dismissal of Plaintiff Jahbree Roberson's Complaint. [Dkt. 11]. In the Complaint, Roberson asserts two causes of action in connection with his medical treatment while being held in Santa Rita Jail in Alameda County ("Santa Rita"). [Dkt. 1]. After carefully considering the Parties' filings, the Court finds this matter is appropriate for adjudication without oral argument. Civ. L.R. 7-1(b). After full and careful review of the briefs and materials submitted by the Parties, and applying relevant legal standards, the Court **DENIES-IN-PART** and **GRANTS-IN-PART** Defendant Alameda's Motion to Dismiss. Consistent with the discussion in this Order, Plaintiff Roberson is **GRANTED leave to file an Amended Complaint by September 6, 2024,** which cures and addresses the issues discussed in this Order. Concurrently, the Court **GRANTS** Defendant Alameda's request for judicial notice of certain Court documents as discussed herein. [Dkt. 11-1].

## BACKGROUND

**I.  FACTUAL ALLEGATIONS**

Plaintiff Roberson alleges the following facts in his Complaint. [Dkt. 1]. Plaintiff Roberson

is a resident of Alameda County. *Id*. at ¶ 6. During the relevant time period, Plaintiff Roberson was held as a pretrial detainee at Santa Rita in Alameda County, California. *Id*. at ¶ 13. Plaintiff Roberson suffers from type 1 diabetes which requires him to have daily blood sugar checks and insulin injections. *Id*. at ¶¶ 16, 21.

Defendant Alameda is a municipal entity that is regulated under the laws of the State of California and has "the power to adopt policies, and prescribe rules, regulations and practices affecting the operation of the Alameda County Jail." *Id*. at ¶ 7. At all relevant times, Defendant was the employer of Defendants DOES 1–25. *Id*.

On or about September 2022, while Plaintiff Roberson was in custody pending a court appearance, two Alameda County Sheriff's deputies forcefully pressed Plaintiff Roberson against a wall, scraping his right toe. *Id*. at ¶¶ 1, 15. Later that day, Plaintiff Roberson arrived back at Santa Rita, informed deputies of his injury, and he was told that he needed to make medical requests on a jail issued tablet computer regarding his scraped right toe. *Id*. at ¶ 17. Plaintiff Roberson was never given a jail issued tablet. *Id*. at ¶ 22.

Nurses and medical practitioners visited Plaintiff Roberson three (3) times a day to check his blood sugar and give him insulin. *Id*. at ¶ 18. Every time a medical staff member visited him to treat his diabetes, Plaintiff Roberson informed them of his injury to his toe and was told that they would inform a doctor. *Id*. at ¶¶ 19, 22.

One week after Plaintiff Roberson's date of injury, he was seen by a Santa Rita Jail doctor where the doctor treated Plaintiff Roberson's toe injury by wrapping his toe with gauze and administering an antibiotic ointment. *Id*. at ¶ 20. Plaintiff Roberson was instructed by the doctor at Santa Rita that his bandages needed to be changed every day. *Id.* The doctor "updated Plaintiff's medical file to reflect the new injury and treatment requirements." *Id.*

Afterwards, Plaintiff Roberson requested that his bandages be changed every day, per his doctor's treatment plan, yet his bandages were changed "two (2)-three (3) times a week during his incarceration." *Id*. at ¶ 21. Throughout Plaintiff Roberson's two-to-three-month incarceration at Santa Rita, he experienced "continuous pain" and "the skin around his foot [began] peeling and his right leg [began] turning green." *Id*. at ¶ 22.

When Plaintiff Roberson was released from Santa Rita, on or about October 2022, he went to the emergency room where his toe was amputated due to infection. *Id*. at ¶ 23–24. Seventeen (17) months later, "the same infection took over a second toe on Plaintiff's right foot, which let to its amputation as well." *Id*. at ¶ 25.

## II. PROCEDURAL HISTORY

On April 8, 2024, Plaintiff Roberson filed his Complaint for Damages against Defendant County of Alameda and DOES 1–50 (collectively, Defendants). [Dkt. 1]. Plaintiff Roberson alleges two causes of actions against Defendants County of Alameda and DOES 1–25 in connection with his time as a pretrial detainee at Santa Rita Jail: (1) a deliberate indifference claim pursuant to 42 U.S.C. § 1983 and (2) violations of Title II of the Americans with Disabilities Act of 1990 pursuant to 42 U.S.C. § 12101 *et seq. Id.* at 7–8 (first cause of action), 8–9 (second cause of action). The Complaint does not indicate which causes of action are asserted against DOES 26–50. *Id.* Plaintiff Roberson seeks relief in various forms of monetary damages, punitive damages, attorney fees, and injunctive relief. *Id.* at 9.

On May 30, 2024, Defendant Alameda moved to dismiss the Complaint. [Dkt. 11]. On June 13, 2024, Plaintiff Roberson timely filed an opposition to Defendant Alameda's Motion to Dismiss, and on June 30, 2024, Defendant Alameda timely filed its reply to Plaintiff Roberson's opposition. Dkts. 15 (Pl. Roberson's Opp'n. to Def. Alameda's Mot. to Dismiss), 17 (Def. Alameda's Reply). Alameda County also filed a Request for Judicial Notice. [Dkt. 11-1].

## DISCUSSION

### I. LEGAL STANDARD

The familiar standards on a Motion to Dismiss are well-known and not subject to dispute for the instant motion. "The Rule 12(b)(6) standard requires a complaint to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2000)). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)). Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). In other words, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

## II. CLAIM OF DELIBERATE INDIFFERENCE PURSUANT TO 42 U.S.C. § 1983

Plaintiff Roberson's first cause of action asserts "Fourteenth Amendment – Deliberate Indifference under 42 U.S.C. Section 1983 . . . against Defendants COUNTY and DOES 1–25". [Dkt. 1 at 7]. As discussed below, the Court finds that Plaintiff Roberson has sufficiently pled a claim of deliberate indifference as to the individual DOE defendants, but Plaintiff Roberson has not sufficiently pled a claim of deliberate indifference as to Defendant Alameda.

### A. Defendant Alameda Applies the Wrong Legal Standard for Arguing Dismissal of the Deliberate Indifference Claim

The standard for evaluating a constitutional cause of action for deliberate indifference to a medical need differs depending on whether the plaintiff is a convicted prisoner as opposed to a pretrial detainee. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1122 (9th Cir. 2018). For convicted prisoners, the Eight Amendment's cruel and unusual punishment clause is the source of and analytical rubric for a cause of action for deliberate indifference to a medical need. *Id.* By contrast, for pretrial detainees such as Plaintiff Roberson here, the Fourteenth Amendment's due process clause is the source of and provides the analytical framework for a claim for deliberate indifference. *Id.* The distinction is not merely semantic:

> Under both the Due Process Clause and the Eighth Amendment, one of the key issues is whether the state actor has acted with "deliberate indifference" to a medical need. For many years, the standards under both constitutional provisions were treated as the same and courts applied a ***subjective deliberate-indifference standard***. Under that subjective deliberate-indifference standard, a defendant was liable only if he "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have drawn] the inference." ***The***

4

*use of a single deliberate-indifference standard has changed in the Ninth Circuit* and several other circuits. Now, the deliberate-indifference standard that applies to a pretrial detainee's claim is *an objective one rather than the subjective one* that continues to apply to a convicted prisoner's claim."

*Flentoil v. Santa Clara Cnty. Dep't of Corr.*, No. 18-CV-03486-EMC, 2020 WL 571025, at *6-7 (N.D. Cal. Feb. 5, 2020) (citations omitted, emphasis added).

Defendant Alameda's motion to dismiss argues that Plaintiff's pleading fails because of an alleged failure to adequately plead "deliberate indifference" under the Eighth Amendment: "Plaintiff's first claim for relief against Defendants sounds in deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment." [Dkt. 11 at 5]. In arguing for dismissal, Defendant Alameda cites and explicitly relies only on cases which all involve convicted prisoners asserting deliberate indifference claims under the Eighth Amendment; argues that the subjective standard from those cases requires Plaintiff Roberson here to have pled that each "defendant must have 'purposefully ignored or failed to respond to a prisoner's pain or possible medical need;'" and argues expressly that the Complaint should be dismissed because of failure to meet that subjective standard. Dkt. 11 at 5–6 (quoting *McGukin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (Eighth Amendment deliberate indifference case by convicted prisoner applying subjective standard)) (citing *Franklin v. Or. State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (Eighth Amendment deliberate indifference case). As such, Defendant Alameda's motion fails to adequately argue (and thus fails to demonstrate) whether the Complaint here satisfies the pleading requirements for an "deliberate indifference" claim under the Fourteenth Amendment's *objective* standard. [Dkt. 11, *passim*]. As such, Defendant Alameda's motion to dismiss is legally insufficient to warrant dismissal of a cause of action.

In opposition, Plaintiff Roberson states correctly that "[a] claim for a violation of a pretrial detainee's right to adequate medical care arises under the Fourteenth Amendment, rather than the Eighth Amendment." [Dkt. 15 at 9]. Instead of addressing the legal standard issue directly and instead of seeking leave to raise new legal bases for dismissal on reply, Defendant Alameda's reply brief ignores the issue entirely and does nothing to cure the legal defect in its motion. [Dkt. 17, *passim*]. Rather, Defendant Alameda argues that the pleading at most merely demonstrates

negligence and repeats the citation to and reliance on the same Eighth Amendment subjective standard case cited in its opening brief to argue that "matters of medical judgment" (that is, the *subjective* judgment of the defendants here) "cannot form the basis of a § 1983 claim." Dkt. 17 at 2–3 (citing *Franklin*, 662 F.2d at 1344). Like its opening brief on this motion, Defendant Alameda's reply brief is legally deficient.

In *Gordon*, the Ninth Circuit set forth the objective standard for deliberate indifference to medical needs claims asserted under the Fourteenth Amendment by pretrial detainees, such as Plaintiff Roberson. *Gordon*, 888 F.3d at 1125. Plaintiffs must plead the following four elements: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved-making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* "'With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro v. Cnty of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). As the Ninth Circuit further explained the distinction between the objective standard versus the subjective standard, "the plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.' This differs from the inquiry under the Eighth Amendment which requires that the 'prison official must subjectively have a sufficiently culpable state of mind . . . .' By contrast 'a pretrial detainee need not prove those subjective elements about the officer's actual awareness of the level of risk.'" *Id.* at 1125 n.4 (citations and internal footnotes omitted).

Here, Defendant Alameda's motion nowhere mentions, much less argues or shows, whether the Complaint fails to adequately plead that the defendants failed to "take reasonable available measures" or whether "a reasonable official in the circumstances would have appreciated the high degree of risk." Defendant Alameda's briefs nowhere mention, much less argue or show, whether the Complaint pleads adequately that the defendants' conduct was "objectively unreasonable" under

6

the facts and circumstances of this case. Instead, Defendant Alameda argues that the Complaint fails to adequately plead that the defendants acted "purposefully" and repeatedly argues that subjective "differences of opinion" between Plaintiff and the medical authorities does not meet the standard for deliberate indifference. [Dkt. 11 at 6 ("said allegations show only that Plaintiff *subjectively* believes he did not receive the kind and quality of medical treatment for his toe injury that was indicated. However, as noted above, a difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a § 1983 claim.") (emphasis in original; citing *Franklin*, 662 F.2d at 1344 (Eighth Amendment case) and *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (same))].

For these reasons alone, Defendant Alameda's motion is **DENIED**. Defendant Alameda argues contrary to law that Plaintiff's first cause of action should be analyzed as an Eighth Amendment claim under the subjective test for deliberate indifference. The Ninth Circuit has made abundantly clear that the standard for a pretrial detainee's claim for deliberate indifference to a medical need is the objective standard under the Fourteenth Amendment. Defendant Alameda's motion fails to address the pleading under the proper legal standard and is plainly legally insufficient on its face to warrant dismissal of this cause of action.

**B.     Defendant Alameda Fails to Show That the Deliberate Indifference Claim Lacks Adequate Pleading of Causation of Serious Harm.**

Defendant Alameda's opening brief makes two passing references to the Fourteenth Amendment, but as noted does not cite case law or apply the objective standard under the Fourteenth Amendment for evaluating a deliberate indifference claim. [Dkt. 11 at 5-6]. Defendant Alameda's only substantive mention of the Fourteenth Amendment is directed to whether the injuries suffered were caused by the defendants' failures to act (which thus appears to be addressing, without citing, the fourth element (causation of injuries) of the deliberate indifference cause of action discussed above). *Id.* at 6 ("Furthermore, to the extent that Plaintiff alleges a one week delay in initial treatment, this allegation is insufficient to support a Fourteenth Amendment violation because Plaintiff does not allege the delay caused him significant harm."). Defendant Alameda argues that the infection in Plaintiff's toe "formed gradually over the course of his two-to-three month period

1   of incarceration . . . Plaintiff fails to allege any discrete injury caused by the one week delay between his injury and his initial consultation with a doctor." *Id.* Even though Defendant Alameda never expressly cites, applies, or analyzes the proper objective test for a deliberate indifference claim under the Fourteenth Amendment, the Court will address deliberate indifference under the Fourteenth Amendment for completeness, despite the fact that the remainder of Defendant Alameda's motion improperly attacks the Complaint under the Eighth Amendment's subjective standard.  *See Smith v. Santa Cruz Cnty.*, No. 5:21-CV-00421-EJD, 2023 WL 8360054 (N.D. Cal. Dec. 1, 2023).

The Court notes that Defendant Alameda's motion nowhere addresses any of the three other elements of a Fourteenth Amendment deliberate indifference claim as enunciated by the Ninth Circuit, as discussed above, and thus dismissal is not sought and is not warranted with regard to the adequacy of the pleading of those three elements.

Defendant's argument as to the causation element is not persuasive.  Here, Plaintiff Roberson alleges that following his return to Santa Rita, he continuously informed the medical staff of his scraped toe and his doctor's prescribed treatment plan. Dkt. 1 at ¶¶ 18 ("On the date that the injury occurred, Plaintiff informed all of the nurses/medical practitioners who visited him of the injury to his toe and was told by the nurses/medical practitioners that a doctor would be informed"), 21 ("After the doctor's treatment, and everyday throughout the duration of Plaintiff's two(2)-three (3) month incarceration at Santa Rita, whenever the nurses/medical practitioners arrived to check his daily sugar levels, Plaintiff would request that his bandages be changed.").  Plaintiff Roberson further alleges that "[t]he doctor at Santa Rita Jail treated Plaintiff's toe injury by wrapping it with gauze and bandages and providing Plaintiff with an antibiotic ointment.  The doctor instructed Plaintiff Roberson that the bandages needed to be changed every day and then, on information and belief, updated Plaintiff Roberson's medical file to reflect the new injury and treatment requirements." *Id.* at ¶ 20.

Despite the doctor's instructions, Plaintiff Roberson alleges that "his bandages were only changed two (2)-three (3) times a week during his incarceration." *Id.* at ¶ 21.  The Complaint alleges that "[d]espite Plaintiff's numerous requests for treatment, his bandages were still only changed a

few times a week[,]" *id.* at ¶ 22, and by failing to do so "the medical staff deliberately provided insufficient care by refusing to follow the treating doctor's orders[,]" dkt. 15 at 12. Plaintiff Roberson alleges that, after the doctor issued an updated direction for treatment, "the Santa Rita medical staff deliberately ignored their own doctor's instructions despite Plaintiff's multiple requests every day to have to [sic] doctor's orders carried out." *Id.* at 11. Fundamentally, Plaintiff Roberson alleges that that "Santa Rita medical staff never properly treated Plaintiff for his toe injury." *Id.* at 9. Thus, even if the one-week delay before Roberson was initially seen by a doctor is not alone pled to be the alleged direct cause of his injuries, the Complaint adequately pleads that the medical staff's failure to comply with the doctor's treatment orders to change Roberson's bandages everyday caused his injuries which increased and developed over the course of his incarceration.

The Court finds that Plaintiff Roberson's Complaint sufficiently pleads causation of his injuries, and thus (because Defendant Alameda fails to demonstrate or adequately argue that the pleading is deficient in any other respects for this cause of action) finds that the Complaint sufficiently pleads a Fourteenth Amendment deliberate indifference to medical needs cause of action. Accordingly, the Court **DENIES** Defendant Alameda's Motion to Dismiss Plaintiff Roberson's first cause of action with respect to all of the individual Doe Defendants at issue here. The Court next turns to the cause of action as asserted against Alameda County.

C. **Whether Plaintiff Roberson Has Sufficiently Pled a Claim for Deliberate Indifference against Defendant Alameda**

In addition to the individual defendants, Plaintiff Roberson asserts his Fourteenth Amendment deliberate indifference claim against Defendant Alameda County. [Dkt. 1 at 7]. A claim against a government entity is evaluated under *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978). Under *Monell* and its progeny, a plaintiff must allege and prove that a government's action in relation to municipal policy "caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691 (1978)). Under *Monell*, there are in general three possible theories of liability for a claim asserted against a government entity: policy, custom, and practice. *Mitchell v. Cnty. of Contra Costa*, 600 F. Supp. 3d 1018, 1028 (N.D.

Cal. 2022).  A "government's policy or custom . . . [may be] made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]'"  *Id.* at 1027 (citations omitted) (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) ("a jury could find a policy or custom of using excessive force from the police chief's failure to discipline officers for such conduct")).  Under *Monell*, a claim against a government entity may be based on a policy, custom, or practice by pleading governmental actions and practices such as a failure to train employees in a manner that amounts to deliberate indifference to a constitutional right, or a failure to investigate and discipline employees in the face of widespread constitutional violations.  *See, e.g.*, *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802-03 (9th Cir. 2018); *see also Chaidez v. Alameda Cnty.*, No. 21-CV-04240-RS, 2023 WL 6466385, at *7 (N.D. Cal. Oct. 3, 2023) (plaintiff demonstrated "at least nine instances resulting in lawsuits (including his own) where pretrial detainees at Santa Rita Jail have not received adequate medical care" and has "plausibly plead[] that Alameda County has failed to train personnel at Santa Rita Jail to provide detainees with necessary medical treatment, and that this failure to train constitutes deliberate indifference" under *Monell*).  Under *Monell*, "[t]he plaintiff bears the burden of showing "the injury would have been avoided" had proper policies been implemented.  *Chaidez,* 2023 WL 6466385, at *6 (N.D. Cal. Oct. 3, 2023) (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1196 (9th Cir. 2002)).

Defendant Alameda argues that Plaintiff Roberson has failed to "allege *any* fact tending to show a policy or custom" or "widespread practice that caused a constitutional deprivation when enforced[.]"  Dkt. 11 at 6–7 (emphasis in original).  In opposition, Plaintiff Roberson presents no specific arguments to address governmental liability against Alameda County.  [Dkt. 15 at 9–12].  Plaintiff Roberson's Complaint does not expressly assert a claim under *Monell* against Alameda County with respect to any specifically identified policy, custom, or practice.  [Dkt. 1 at 7].

On a motion to dismiss, the Court is to construe the Complaint in light most favorable to the nonmoving party and take the allegations in the complaint as true.  *Inman v. Anderson*, 294 F. Supp. 3d 907, 921 (N.D. Cal. 2018) ("construing Plaintiff's *Monell* claim against the County broadly and in light of the factual allegations common to all of Plaintiff's claims").  Accordingly, a review of the Complaint indicates that there are allegations which appear to implicate either policy, practices,

or customs of Alameda County. *See* Dkt. 1 at ¶¶ 17 ("Plaintiff was told that medical requests had to be made on jail issued tablets. Since Plaintiff did not have a tablet, he was instructed to fill out a request for a tablet first and wait for his request to be granted."); 22 ("Plaintiff never received a tablet after requesting one on the date of his injury."). First, the Complaint appears to allege vaguely that there may be a practice, policy, or custom regarding the failure to allow pretrial detainees to make medical requests timely, a failure to issue tablets to pretrial detainees so that they can make medical requests, as well as a potential failure to train employees regarding procedures for pretrial detainees to make medical requests.

Second, as discussed in detail above, there are extensive pleadings in the Complaint regarding the Santa Rita staff's failures to follow the doctor's instructions for treating Plaintiff Roberson's toe and failures to properly treat the toe. *E.g.*, Dkt. 1 at ¶ 22 ("Despite Plaintiff's numerous requests for treatment, his bandages were still only changed a few times a week and not daily per the doctor's orders."). These pleadings appear to allege vaguely that there may be a practice, policy, or custom regarding the failure to train and supervise medical staff. *See Muhmoud v. City of San Jose*, No. 20-CV-08808-EJD, 2024 WL 2883509, at *7 (N.D. Cal. June 6, 2024) ("The inquiry is whether the training or supervision is adequate, 'and if it is not, the question becomes whether such inadequate training [or supervision] can justifiably be said to represent city policy.'") (citations omitted).

However, as noted, the Complaint never directly or explicitly pleads the existence of a practice, policy, or custom of Defendant Alameda County, and never expressly asserts *Monell* liability against Defendant Alameda County (but rather simply states that the Fourteenth Amendment deliberate indifference claim is asserted). Further, as noted, Plaintiff Roberson's opposition to the motion to dismiss does not directly address governmental liability against Defendant Alameda. Such failure to squarely address the issue is indicative of the weakness of the pleading. As detailed above, Plaintiff Roberson's factual allegations in the Complaint specifically addressed to Defendant Alameda are vague at best. *See Inman*, 294 F. Supp. 3d at 921 ("vague assertions of municipal policies [are] insufficient"). In light of a fulsome review of the Complaint and the submissions of the Parties, and in light of the relevant legal standards, the Court finds that

1  the Complaint does not sufficiently and plausibly allege the existence of a policy, practice, or custom
2  that would have caused Plaintiff Roberson injury under a claim of deliberate indifference against
3  Defendant Alameda.

4  Accordingly, the Court finds that Defendant Alameda has demonstrated sufficient basis for
5  granting dismissal of that first cause of action, to the extent asserted against Defendant Alameda for
6  governmental liability.  The Court **GRANTS** Defendant Alameda's Motion to Dismiss the First
7  Cause of Action as to Defendant Alameda Without Prejudice.  As noted, Plaintiff appears to have
8  inartfully (and insufficiently) pled facts which may have been intended to assert a municipal liability
9  claim under *Monell*.  Thus, the Court **GRANTS** Plaintiff leave to file an Amended Complaint for
10 the first cause of action for deliberate indifference as to Defendant Alameda County.  The deadline
11 to file any such Amended Complaint is **September 6, 2024**.

### III. SECOND CAUSE OF ACTION UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT
#### A. Whether Plaintiff Has Adequately Pled a Claim under Title II of the ADA

Plaintiff Roberson's second cause of action asserts that, by not reasonably accommodating his disability, Defendant Alameda violated Title II of the Americans with Disabilities Act ("ADA"). [Dkt. 1 at ¶¶ 33–36].  Under the ADA "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  A plaintiff pleading an ADA claim must adequately alleged that: "(1) he is a 'qualified individual with a disability;' (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

The Parties do not dispute that Plaintiff Roberson is a qualified individual with a disability (type 1 diabetes), nor do they dispute that Santa Rita, a county-run prison, qualifies as a public entity under the ADA.  Dkt. 17 at 2 ("Plaintiff's only qualifying disability was his diabetes"); Dkt. 11 at 7–9.  The crux of the dispute here is whether Plaintiff Roberson has adequately pled that he was

excluded from participation in, or denied the benefits of, Defendant Alameda's services, programs, or activities, or adequately pled that he was discriminated against by reason of his disability. [Dkt. 11 at 7].

There are, in general, three potential theories for alleging disability discrimination in the provision of inmate services, programs, or activities under the ADA: discrimination based on disparate treatment; discrimination based on disparate impact; or denial of reasonable modifications (also referred to as reasonable accommodations). *See McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004) ("[T]he district court appears to have misconstrued McGary's claim as either a 'disparate treatment' or a 'disparate impact claim, rather than a 'reasonable accommodation claim . . . . A plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim."); *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962, 965 (N.D. Cal. 1998) ("A disability discrimination claim may be brought either on the theory that defendant failed to make reasonable accommodations or on a more conventional disparate treatment theory, or both. This is because the ADA not only protects against disparate treatment, it also creates an affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable accommodation.'"); *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017) ("A plaintiff can allege disability discrimination in the provision of inmate services, programs, or activities under the ADA or the RA by pleading either (i) discrimination based on disparate treatment or impact, or (ii) denial of reasonable modifications or accommodations.").

From the face of the Complaint, Plaintiff Roberson is asserting an ADA claim under a theory of "denial of reasonable modifications or accommodations" with regard to the provision of inmate services, programs or activities. Dkt. 1 at ¶ 34 ("the Defendants failed to reasonably accommodate Plaintiff's type one (1) diabetes under Title II of the Americans With Disabilities Act"). The Complaint alleges that there was a "refusal to adequately accommodate Plaintiff's disability during the course of the subject-incident. Defendants were informed of Plaintiff's disability repeatedly by Plaintiff. Defendants should have known that depriving Plaintiff of proper medical treatment would foreseeably causw [sic] significantly more injury because of Plaintiff's disability than would be suffered by other members of the public." *Id.* The Complaint further alleges that the failure to

13

reasonably accommodate was the cause of Plaintiff's injuries: "As a result of Defendants refusing to reasonably accommodate Plaintiff's disability, Plaintiff suffered severe injuries to his foot and toes." *Id*. The pleading for this cause of action concludes that "[t]he aforementioned conduct of Defendants, in failing to reasonably accommodate Plaintiff's disability, discriminated against Plaintiff by reason of his recognized disability." *Id.* at ¶ 36.

Defendant Alameda argues that Plaintiff Roberson's ADA claim should be dismissed because, fundamentally, that ADA claim rests solely on an allegation of inadequate treatment, which is not permissible under Title II of the ADA. Dkt. 11 at 8 (citing *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability.")). In opposition, Plaintiff Roberson argues that his ADA claim is not based on allegation of inadequate treatment; rather, he argues that his ADA claim rests upon Defendant Alameda's alleged extreme denial of medical care by allegedly failing to treat his medical need. [Dkt. 15 at 7–9]. In reply, Defendant Alameda argues that "even assuming that medical personnel failed to give Plaintiff the treatment prescribed by the Doctor, the treatment prescribed by the Doctor was solely in relation to Plaintiff's scraped toe (a non-qualifying disability) rather than his qualifying disability – his underlying diabetes." [Dkt. 17 at 4].

Furthermore, Plaintiff Roberson argues in his opposition that "numerous Circuit courts have identified ADA violations in cases where the denial of medical care is so extreme as to suggest discriminatory refusal to accommodate a disability-related need, such as when a disabled detainee is denied a broad range of medical services beyond those necessary for treating his underlying disability." Dkt. 15 at 7–8 (citing cases). However, the Complaint *nowhere* identifies an extreme denial of medical care and *nowhere* alleges a denial of a broad range of medical services. Indeed, neither the Complaint nor the opposition brief attempt to analogize or apply the numerous cited exemplar cases to the facts as alleged in the Complaint. Construing the Complaint in the light most favorable to Plaintiff Roberson, the Court finds that Plaintiff has not adequately alleged that he was denied or excluded from any specific service, program, or activity by Defendant Alameda. As detailed above, Plaintiff Roberson admits that his bandages were changed two to three times per week but complains that they should have been changed one time per day as instructed by his doctor.

14

[Dkt. 1 at ¶¶ 21–22].  Since Defendant Alameda provided some level of treatment (even if inadequate), this does not indicate outright denial of or exclusion from medical services.  *See Razon v. Cnty. Of Santa Clara*, No. 17-CV-00869-LHK, 2018 WL 405010, at *10 (N.D. Cal. Jan. 12, 2018) (plaintiff did not sufficiently indicate an "outright and deliberate denial of access to care" when they received some, though an improper level of, "oxygen therapy, medication, and monitoring").  Therefore, to the extent Plaintiff argues that he was discriminated against by being denied or excluded from medical care (and thus was not provided reasonable accommodations), the Court finds that the allegations in the Complaint are legally inadequate to plausibly state such a claim.

The Complaint is at best vague with regard to what reasonable accommodation was denied such that there was actionable discrimination based on a disability.  Plaintiff argues that "[a]s a diabetic, Plaintiff's injury required heightened accommodations that an ordinary person would not require for an open wound on their lower extremity, yet jail staff intentionally failed to give Plaintiff the medical treatment that a diabetic detainee required and instead intentionally treated him like a non-diabetic detainee."  [Dkt. 15 at 9].  However, Plaintiff Roberson's Complaint does not identify what heightened accommodations were allegedly required – merely reciting the phrase "accommodations" is not sufficient.  To the extent Plaintiff Roberson's argument implies that the medical staff's failure to change his toe bandages daily constitutes the denied "reasonable accommodation," that argument appears to be another way of asserting that there was inadequate medical care which is not actionable under the ADA.  *Simmons*, 609 F.3d at 1022.  To the extent Plaintiff Roberson is arguing that there was some other, unstated accommodation needed (and denied) for his disability, the Complaint does not adequately provide notice of any such theory.  Moreover, one court has recognized that "[t]here is no clear guidance as to whether a plaintiff may ever state a failure to accommodate claim under the ADA or RA based on a correctional facility's failure to provide medical treatment for a disability."  *Atayde*, 255 F. Supp. at 1001.

Further, the failure to specify what accommodations were required and denied makes it difficult for the Court to discern whether there was discrimination by reason of the disability here.  Defendant Alameda argues that the complained-of failure to change Plaintiff Roberson's bandages daily was treatment for his toe, and not treatment for his diabetes.  [Dkt. 17 at 3].  Indeed, Plaintiff

15

1  Roberson's opposition brief links the "heightened accommodations" to "Plaintiff's injury" and not
2  the asserted disability. Dkt. 15 at 9 ("Plaintiff's injury required heightened accommodations that an
3  ordinary person would not require for an open wound on their lower extremity[.]").

4        After a fulsome review of the Complaint and consideration of the Parties' submissions, the
5  Court finds that the Complaint fails to adequately plead a claim under Title II of the ADA against
6  Defendant Alameda County.  In light of the relevant legal standards, the Complaint does not
7  sufficiently plead discrimination based on denial of reasonable accommodations under the ADA,
8  for the reasons discussed herein.

9        Accordingly, the Court finds that Defendant Alameda has demonstrated sufficient basis for
10 granting dismissal of the second cause of action in the Complaint under Title II of the ADA. The
11 Court **GRANTS WITHOUT PREJUDICE** Defendant Alameda's Motion to Dismiss the Second
12 Cause of Action as to all Defendants.  As noted, Plaintiff Roberson's pleading is vague and
13 incomplete, making detailed analysis of whether there is a cognizable cause of action here difficult
14 and thus justifying clarification.  Thus, the Court **GRANTS** Plaintiff Roberson leave to file an
15 Amended Complaint for the second cause of action for violation of Title II of the ADA.  The
16 deadline to file any such Amended Complaint is **September 6, 2024**.

### B. Whether Plaintiff Has Adequately Pled a Claim for Compensatory Damages under Title II of the ADA by Pleading Discriminatory Intent

Plaintiff Roberson seeks monetary damages as a consequence of Defendant Alameda's alleged ADA violation. [Dkt. 1 at 9].  Defendant Alameda moves to dismiss this claim for relief on the grounds that a plaintiff may only recover monetary damages under Title II of the ADA if there is a showing of discriminatory intent. [Dkt. 11 at 8].  Indeed, "in claims for *compensatory damages* under either the ADA or the Rehabilitation Act, as is the case here, the law in the Ninth Circuit requires that a plaintiff show a defendant had discriminatory intent." *Banga v. Kanios*, No. 16-cv-04270-RS, 2018 WL 11360187 at *2 (N.D. Cal. 2018) (emphasis in original).  In opposition, Plaintiff Roberson does not directly address this issue. [Dkt. 11 at 6–9].

Because the Court is granting Defendant Alameda's motion to dismiss the ADA cause of action with leave to amend, for at least the same reasons and for the reason that Plaintiff Roberson's

16

1   Opposition is silent on this issue, the Court **GRANTS WITHOUT PREJUDICE** Defendant
2   Alameda's motion to dismiss the Complaint's pleading to the extent it seeks compensatory damages
3   for violation of the second cause of action under Title II of the ADA.  As noted, Plaintiff Roberson's
4   pleading is vague and incomplete, making detailed analysis of whether there is a cognizable basis
5   for seeking compensatory damages here difficult and thus justifying clarification.  Thus, the Court
6   **GRANTS** Plaintiff Roberson leave to file an Amended Complaint with regard to a claim or prayer
7   for compensatory damages under the second cause of action for violation of Title II of the ADA.
8   The deadline to file any such Amended Complaint is **September 6, 2024**.

### IV.  DEFENDANT ALAMEDA'S REQUEST FOR JUDICIAL NOTICE

Under Federal Rule of Evidence 201, a court must take judicial notice of certain facts "if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2). Under Rule 201, the necessary information which allows a court to take judicial notice constitute facts that are "not subject to reasonable dispute because [they] (1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Here, Defendant Alameda requests the Court take judicial notice of Plaintiff Roberson's Complaint in this very action.  [Dkt. 11-1].  Plaintiff Roberson's Complaint is part of and in the Court's own record.  As part of the Court's docket for this case, the Complaint is, by definition, already before the Court.  Accordingly, there is no need for the Court to take judicial notice of its own records in this case, because those records are already properly available to and submitted to the Court.  *See Pugh v. Metro. Life Ins. Co.*, No. 18-CV-01506-YGR, 2019 WL 484279 at *1 n.5 (N.D. Cal. Feb. 7, 2019) ("As a preliminary matter, the Court need not take judicial notice of documents on filed on the docket in the instant action and so DENIES IN PART plaintiffs' request as to those documents"); *see also J. P. by and through Villanueva v. County of Alameda*, No. 17-cv-05679-YGR, 2018 WL 3845890 at *3 n.3 (N.D. Cal. Aug. 13, 2018) ("the Court need not take judicial notice of documents on this case's docket to consider them."); *see also Johnson v. Aurora Bank, F.S.B.*, No. 14-CV-05424-JSC, 2015 WL 4638305 at *1 n.1 (N.D. Cal. Aug. 4, 2015) ("Aurora asks the Court to take judicial notice of . . . the Court's March 23 and May 27 Orders

granting Aurora's motion to dismiss . . . . The Court need not take judicial notice of its own docket.");

It is of course self-evident that the Complaint in this matter is a matter of public record and is from a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiff Roberson filed no opposition to Defendant Alameda's request for judicial notice and does not address or oppose the request in the opposition brief on the motion to dismiss. [Dkt. 15]. While unnecessary, because the request is unopposed and because different courts have addressed this issue in different ways, the Court **GRANTS** Defendant Alameda's request for judicial notice of Plaintiff's Complaint. *See Tonelli v. Wells Fargo Bank, N.A.*, No. 20-CV-00442-KAW, 2020 WL 4039312 (N.D. Cal. July 17, 2020) ("Plaintiff requests that the Court take judicial notice of the operative complaint. (Dkt. No. 24-1.) The Court need not take judicial notice of its own docket. As there is no opposition, however, the Court GRANTS judicial notice of the First Amended Complaint."); *cf. United States v. Author Servs., Inc.*, 804 F.2d 1520 (9th Cir. 1986) ("It is well established that a court may take judicial notice of its own records."); *cf. also Hymes v. Procunier*, 428 F.2d 824, 824 (9th Cir. 1970) ("Of course, the district court can take judicial notice of its own records[.]"). For future reference, the Court advises counsel and the Parties that requesting judicial notice of documents in the Court's docket for this matter is unnecessary and that an accurate pinpoint citation to the Court's records is sufficient. *NovelPoster v. Javitch Canfield Group*, 140 F.Supp.3d 954, 960 n.7 (2014) ("Defendants' request for judicial notice of the TRO application and order is GRANTED, although defendants are advised for future reference that they need not seek judicial notice of documents previously filed in the same case. An accurate citation will suffice.").

//
//
//
//
//
//
//

//

## CONCLUSION

For the reasons discussed herein, Defendant Alameda County's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART WITHOUT PREJUDICE**. Defendant's Request for Judicial Notice is **GRANTED**. The Court **GRANTS** Plaintiff Roberson leave to file an Amended Complaint consistent with this Order on or before **September 6, 2024**.

**IT IS SO ORDERED.**

Dated: August 2, 2024

PETER H. KANG
United States Magistrate Judge